UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
ANDRE NOISETTE,                 )
                                )
            Plaintiff,          )
                                )
       v.                       )     Civil Action No. 08-2237 (RWR)
                                )
TIMOTHY F. GEITHNER,            )
                                )
            Defendant.          )
_____)
```

<u>MEMORANDUM OPINION</u>

Plaintiff Andre Noisette brought this action against the
Treasury Secretary alleging racial discrimination and retaliation
in employment in violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e, <u>et seq.</u> The Secretary has moved to
dismiss, challenging venue and claiming that Noisette failed to
exhaust his administrative remedies before filing this action.
Because venue is proper in this district for Counts I and II and
pendent venue applies to Counts III and IV, the defendant's
motion to dismiss Counts III and IV based on improper venue will
be denied. Because Noisette has raised a genuine issue of
material fact as to when he had a reasonable suspicion that he
had been the victim of the alleged discrimination, the
defendant's motion to dismiss Counts I and II, treated as a
motion for summary judgment, will be denied. However, because
Noisette did not wait the requisite 180 days after filing his
appeal of the Department of Treasury's Final Agency Decision

("FAD"), the defendant's motion will be granted in part and this action will be dismissed without prejudice.

## BACKGROUND

Noisette is a management official in the Criminal Investigation Division ("CID") of the Treasury Department's Internal Revenue Service ("IRS"). (Am. Compl. ("Compl.") ¶ 12.) He participated in an internal investigation of a discrimination pre-complaint filed against the IRS by a junior CID special agent, Sarah Peebles. (Id. ¶¶ 19, 22.) He made findings favorable to Peebles and then arranged a pre-complaint settlement on behalf of the IRS. (Id. ¶¶ 24-25.) Shortly after participating in that matter, Noisette applied for a vacant Supervisory Special Agent ("SSA") position in Florida. (Id. ¶¶ 28-29.) Initially, in mid-September of 2006, Noisette was chosen to fill the vacancy without having to compete for the position. (Id. ¶¶ 30-32.) However, on October 10, 2006, officials at the IRS headquarters in Washington, D.C. revoked Noisette's selection. (Id. ¶ 35.) He received no official notice of the revocation, though, and his supervisor told him merely that if he wanted the position, he had to either interview competitively for it to be eligible for a pay increase or forego the increase and accept the position as a non-competitive reassignment. (Id. ¶ 36; Pl.'s Opp'n, Noisette Decl. ¶ 7 and Att. F at 119.) He believed he was the selectee and the

interview was an administrative formality. (Pl.'s Opp'n, Noisette Decl. ¶ 9 and Att. F at 119.) Noisette interviewed in Atlanta for the position, but the IRS ultimately selected another candidate on October 23, 2006. (Compl. ¶ 38; Def.'s Mem of P. & A. in Supp. of Mot. to Dis. ("Def.'s Mem.") at 4-5 ¶¶ 8-10.)

On December 5, 2007, Noisette contacted the agency's equal employment opportunity office, and later filed a formal complaint of discrimination, alleging that these personnel decisions were the product of discriminatory and retaliatory actions against him based on his participation in Peebles' pre-complaint proceedings. (Compl. ¶ 40; Pl.'s Opp'n at 5.) On September 30, 2008, the Department issued a FAD on Noisette's formal administrative complaint. (Compl. ¶ 41.) On October 29, 2008, Noisette appealed the FAD to the Equal Employment Opportunity Commission's ("EEOC's") Office of Federal Operations ("OFO") and, before the OFO ruled on his appeal, Noisette filed a request to withdraw it. (Id. ¶¶ 42-43.) On January 15, 2009, OFO granted Noisette's request, but not before Noisette filed this action on December 29, 2008. (Id. ¶¶ 43-44.) The Secretary has moved to dismiss, arguing venue is improper in this district for two of the four counts in the complaint and that Noisette failed to exhaust his administrative remedies.

DISCUSSION

I.   VENUE

Noisette's complaint includes four separate counts and the defendant has moved to dismiss Counts III and IV asserting improper venue.  Title VII's venue provision states that

> an action may be brought in any judicial district in
> the State in which the unlawful employment practice is
> alleged to have been committed, in the judicial
> district in which the employment records relevant to
> such practice are maintained and administered, or in
> the judicial district in which the aggrieved person
> would have worked but for the alleged unlawful
> employment practice, but if the respondent is not found
> within any such district, such an action may be brought
> within the judicial district in which the respondent
> has his principal office.

42 U.S.C. § 2000e-5(f)(3).  Under Title VII's venue provision, a court first must "look to the place where the decisions and actions concerning the employment practices occurred."  Milanes v. Holder, Civil Action No. 09-824 (GK), 2009 WL 3367497, at *2 (D.D.C. Oct. 21, 2009) (internal quotation marks omitted).  Courts also must focus on "the locus of the alleged discrimination[,]" Washington v. Gen. Elec. Corp., 686 F. Supp. 361, 363 (D.D.C. 1988), and employ a "'commonsense appraisal' of events having operative significance in the case."  Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983) (quoting Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)).

Moreover, while venue generally must be appropriate on each cause of action, Lamont, 590 F.2d at 1135, "this Circuit has

adopted the principle of pendent venue which provides that proper venue as to one claim will support adjudication of any other claim as long the claims amount to a single cause of action." Archuleta v. Sullivan, 725 F. Supp. 602, 605-06 (D.D.C. 1989) (citing Beattie v. United States, 756 F.2d 91, 100-01 (D.C. Cir. 1984) (overruled on other grounds)). This approach, "which [gives priority to] joinder over venue in cases where the claims are tied together in the same action, illustrates the importance of joinder for factually interrelated claims." Spender v. Sytsma, 67 P.3d 1, 5 (Colo. 2003). Also, "to apply the principle of pendent venue in any given case is a discretionary decision, based on applicable policy considerations." Beattie, 756 F.2d at 103. These considerations include judicial economy, convenience, fairness and avoidance of piecemeal litigation. Id. Ultimately, "the purpose of venue rules is generally considered to be 'primarily a matter of convenience of litigants and witnesses.'" Id. (quoting Denver & R.G.W.R. Co. v. Bhd. of R.R. Trainmen, 387 U.S. 556, 560 (1967)).

Venue is proper in the District of Columbia based on Counts I and II because the alleged acts involve senior management officials in the District of Columbia revoking Noisette's selection for the SSA position. (Compl. ¶¶ 35, 49, 57.) Counts III and IV allege that, after having his offer revoked by officials in the District of Columbia, Noisette was not selected

to fill the SSA position available in the Florida office.  (<u>Id.</u>
¶¶ 66-68, 78-80.)  This non-selection decision occurred in
Atlanta, where Noisette interviewed for and was denied the
position.  (Pl.'s Opp'n at 4-5, 15.)  Thus, under the first prong
of Title VII's venue provision, venue is proper in the District
of Columbia on Counts I and II only.

Nonetheless, if the complaint alleges essentially one cause
of action, pendent venue may extend to Counts III and IV.  In
determining whether a case can be described as a single cause of
action, courts examine whether the plaintiff has asserted
essentially one wrong, whether the grounds for relief are the
same as to the parties and proof, and whether there will be
"great commonality as to witnesses and evidence."  <u>Beattie</u>, 756
F.2d at 101 (describing the litigation "as a single cause of
action with separate grounds for relief" because the plaintiffs
seek damages for "'an essentially single wrong,' i.e., wrongful
death" (footnote omitted)); <u>see</u>, <u>e.g.</u>, <u>Zenith Radio Corp. v.
Matsushita Elec. Indus. Co.</u>, 402 F. Supp. 262, 328 n.38 (E.D. Pa.
1975) (applying pendent venue in a case involving both the Anti-
Dumping Act of 1916 and federal antitrust law because it would be
"senseless . . . to bifurcate these two exceedingly complex
antitrust cases by dismissing or transferring the antidumping
counts while retaining the antitrust counts since the facts
underlying both sets of issues are essentially the same"); <u>Laffey</u>

v. Northwest Airlines, 321 F. Supp. 1041, 1042 (D.D.C. 1971)
(extending pendent venue to the plaintiff's Civil Rights Act
claim because venue was proper under the Equal Pay Act claim and
the two separate causes of action arose out of common allegations
of employment discrimination against female flight attendants).
Cf. Archuleta, 725 F. Supp. at 606 (refusing to extend pendent
venue because, although plaintiff's discrimination claims were
based on the conduct of a single supervisor, each claim alleged
discriminatory conduct against a different protected class, the
evidence to support each discrimination claim would of necessity
be different, and the suit included nondiscrimination claims
based on administrative law issues).

Although Noisette has separated his claim into four separate
counts, all counts reflect essentially one wrong --
discriminatorily denying Noisette the SSA position.  The non-
selection alleged in Counts III and IV stemmed precisely from the
revocation alleged in Counts I and II and followed closely on the
heels of it.  Noisette would not have interviewed in Atlanta for
the position and been denied it had the alleged revocation in
Washington D.C. never occurred.  The grounds for relief in Counts
III and IV overlap with those in Counts I and II, and all involve
the same plaintiff and defendant.  The facts common to all counts
would be subject to proof by evidence common to all counts.
Because venue is proper in the District of Columbia on Counts I

and II, pendent venue therefore will be extended to Counts III and IV.[1]

## II.  EXHAUSTION

The Secretary has moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim for which relief can be granted, alleging that Noisette failed to exhaust his administrative remedies.  Generally, "[b]ecause the exhaustion requirement [under Title VII], though mandatory, is not jurisdictional," Douglas v. Donovan, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009), motions to dismiss for failure to exhaust administrative remedies are more appropriately analyzed under Rule 12(b)(6).  Citizens For Responsibility and Ethics in Wash. v. Bd. of Governors of the Fed. Reserve Sys., Civil Action No. 09-633 (RWR), 2009 WL 3859700, at *2 (D.D.C. Nov. 19, 2009) (citing Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp.

---

[1] None of the other prongs of the Title VII venue statute lays proper venue in the District of Columbia.  The employment records relevant to the non-selection alleged in Counts III and IV are maintained in Cincinnati, Ohio (see Def.'s Reply at 13), but it is not clear where the employment records relevant to the revocation alleged in Counts I and II are maintained.  A decision on venue, therefore, cannot accurately be made based on the location of all relevant employment records.  Also, because Noisette would have worked in the Tampa/St. Petersburg, Florida office had the alleged discrimination not occurred, venue is proper in the Middle District of Florida based on the third prong of the Title VII venue statute.  However, issues of convenience weigh against transferring the case to the Middle District of Florida.  Neither party has alleged that any of the litigants, witnesses or evidence are located there.

2d 59, 64 n.6 (D.D.C. 2008) (quoting <u>Hazel v. Wash. Metro.
Transit Auth.</u>, Civil Action No. 02-1375 (RWR), 2006 WL 3623693,
at *3 (D.D.C. Dec. 4, 2006))).  "In order to survive a motion to
dismiss under Rule 12(b)(6), the allegations stated in the . . .
complaint 'must be enough to raise a right to relief above the
speculative level[.]'"  <u>Demery v. Montgomery County, Md.</u>, 602 F.
Supp. 2d 206, 212 (D.D.C. 2009) (alteration in original) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  If,
however, "matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one for
summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); <u>see also</u>
<u>Citizens for Responsibility and Ethics in Wash.</u>, 2009 WL 3859700,
at *2.

To succeed on a summary judgment motion, the movant must
demonstrate that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary
judgment, "[t]he evidence of the non-movant is to be believed,
and all justifiable inferences are to be drawn in his favor."
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  The
threshold question is whether "there are any genuine factual
issues that properly can be resolved only by a finder of fact
because they may reasonably be resolved in favor of either
party."  <u>Single Stick, Inc. v. Johanns</u>, 601 F. Supp. 2d 307, 312

(D.D.C. 2009) (internal quotation marks omitted). "A genuine issue is present where the 'evidence is such that a reasonable jury could return a verdict for the non-moving party,' in contrast to a situation where the evidence is 'so one-sided that one party must prevail as a matter of law.'" Citizens for Responsibility and Ethics in Wash., 2009 WL 3859700, at *2 (quoting Anderson, 477 U.S. at 248, 252)).

A.   45-day deadline

"[T]he EEOC has been given 'broad authority to enforce [Title VII's] antidiscrimination mandate within the federal government, including responsibility for issuing regulations to control federal agencies' processing of discrimination complaints.'" Jones v. Ashcroft, 321 F. Supp. 2d 1, 10 (D.D.C. 2004) (second alteration in original) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing 42 U.S.C. § 2000e-16)). "Pursuant to that authority, the EEOC has established detailed procedures for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." Bowden, 106 F.3d at 437 (citing 29 C.F.R. §§ 1613.201-283 (1991) (recodified at 29 C.F.R. part 1614 (1996))).

A person who believes he has been discriminated against must consult an EEO "Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel

action, within 45 days of the effective date of the action."  29
C.F.R. § 1614.105(a)(1); <u>Boone v. Clinton</u>, Civil Action No. 05-
346 (RWR), 2009 WL 5125510, at *3 (D.D.C. Dec. 29, 2009).  Under
the applicable regulations, the "agency or the Commission shall
extend the 45-day time limit . . . when the individual shows
. . . that he or she did not know and reasonably should not have
known that the discriminatory matter or personnel action
occurred[.]"  29 C.F.R. § 1614.105(a)(2).  "The plaintiff's time
for [contacting an EEO counselor] starts to run when the
plaintiff has a reasonable suspicion that [he] has been the
victim of discrimination."  <u>Hines v. Bair</u>, 594 F. Supp. 2d 17,
22-23 (D.D.C. 2009) (first alteration in original) (internal
quotations marks omitted).

The Secretary argues that the first two counts of Noisette's
complaint should be dismissed because Noisette waited until
December 5, 2006 to contact an EEO counselor, which is more than
45 days after the Secretary's October 10, 2006 revocation.
(Def.'s Mem. at 13.)  Noisette contends, on the other hand, that
he did not know and reasonably should not have known until
October 23, 2006 that he had suffered a revocation that was
discriminatory because it was only then that "the significance of
the October 10 'revocation' became apparent."  (Pl.'s Opp'n at
11.)  Because both parties have submitted declarations outside

the pleadings and they have not been excluded, the Secretary's motion will be treated as one for summary judgment on this issue.

Although Noisette's complaint treats the October 10, 2006 revocation as a separate discriminatory and retaliatory act (see Compl. ¶¶ 46-61), there is some suggestion that Noisette reasonably did not know that he was subject to discrimination at the time of the revocation. For example, Noisette's own sworn statement shows that, although Noisette was informed orally on October 10, 2006 that he had to participate in the competitive selection process for the SSA position, he received no official documentation from the agency stating that his selection had been revoked. (Pl.'s Opp'n, Noisette Decl. ¶ 7.) Noisette's statement further shows that he believed the interview to be merely an administrative formality, that he decided to participate in the competitive process because he wanted to receive the pay increase, and that he was confident that he would be selected for the position because he previously had been selected. (See Id. ¶ 9; see also Pl.'s Opp'n, Att. F at 119 ("[I]f I wanted the position in St. Petersburg, [for] which I was previously selected, I had two choices. I could take a non-competitive reassignment . . . or I could interview for the position.").) These statements suggest that Noisette did not believe that the choices imposed upon him after October 10 had

any greater meaning than that he was required to compete for the position in order to receive the pay increase.

These facts are distinct from those of other cases where plaintiffs have claimed that they did not have a reasonable suspicion of the discriminatory act, but the evidence indicated otherwise. In Aceto v. England, 328 F. Supp. 2d 1 (D.D.C. 2004), for example, the plaintiff argued that he did not know or have reason to know that he was subject to discrimination when the defendant prohibited him from using his personal handicapped parking card while driving a Navy vehicle, but the undisputed evidence rebutted this argument. Indeed, in a memorandum sent to the defendant more than 45 days before the plaintiff contacted an EEO counselor, the plaintiff asserted that disability protection regulations allowed him to use his personal handicapped card in a government vehicle. Id. at 7. Also, the plaintiff stated that nearly six months prior to contacting an EEO counselor, he believed the defendant's conduct was discriminatory. See id. Similarly, in McCants v. Glickman, 180 F. Supp. 2d 35 (D.D.C. 2001), though the plaintiff contacted an EEO counselor within days of learning that other candidates had been selected for the position he sought, undisputed facts in the record revealed that the plaintiff suspected discrimination on the day he interviewed for the position, which was two years before he contacted the counselor. By letter, the plaintiff stated that he believed that

his "interview was 'tainted' and that he began 'bracing' himself *that day* to be 'kicked in the face' by the USDA because one of the interviewers treated him rudely." Id. at 41.

Here, although there are some inconsistencies in Noisette's complaint and supporting documents regarding whether Noisette viewed the revocation as an act distinct from the non-selection, the question of when Noisette believed or should have believed that he was the subject of discrimination centers on a disputed material fact that bears upon whether Noisette properly exhausted his administrative remedies under 29 C.F.R. § 1614.105(a)(1). Because summary judgment may be granted only where there is no genuine issue of material fact, the Secretary's motion as to this issue, treated as a motion for summary judgment, will be denied.

B. 180-day waiting period

A federal employee complainant who has filed an appeal of a FAD with the EEOC may bring a civil action in a United States District Court "[w]ithin 90 days of receipt of the Commission's final decision on an appeal" or "[a]fter 180 days from the date of the filing of an appeal . . . if there has been no final decision by the Commission." 29 C.F.R. § 1614.407(c), (d). "Complainants must timely exhaust these remedies before bringing their claims to court." Bowden, 106 F.3d at 437 (emphasis added); see also Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 332 (D.C. Cir. 1992) ("This administrative remedies exhaustion

requirement is mandatory." (citing <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 832-33 (1976))).

The defendant has shown that Noisette failed to exhaust his administrative remedies.  Noisette filed his FAD appeal on October 29, 2008 and 23 days later, on November 21, 2008, requested withdrawal of his appeal.  However, before the EEOC ruled on Noisette's withdrawal request, Noisette filed this lawsuit.  Noisette did not wait to receive a final decision on his appeal from OFO or wait 180 days from the date he filed his appeal to bring this action.

For a federal employee complainant who has not filed an appeal of a FAD with the EEOC, the EEOC regulation sets the deadline to bring a civil action as 90 days after he has received the FAD.  29 C.F.R. § 1614.407(a).  Noisette filed this action on December 29, 2008 and argues that because he ultimately withdrew the appeal of his September 30, 2008 FAD, the only way "to avoid running the risk of being untimely was to initiate this action before his appeal . . . was formally dismissed[.]"  (Pl.'s Opp'n at 12.)  However, Noisette has presented no authority for the view that withdrawing an appeal switches the applicable timetable for filing a civil action from that set forth in § 1614.407(c) and (d) to the 90-day deadline in § 1614.407(a).  Indeed, under a nearly identical set of facts, <u>Jones</u> held that a plaintiff who had requested a withdrawal of his appeal and then proceeded to

file a lawsuit before the 180-day period had run had failed to exhaust his administrative remedies.  <u>Jones</u>, 321 F. Supp. 2d at 11.

"Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible[.]"  <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985).  By withdrawing his appeal, however, Noisette stripped the OFO of its chance to investigate in a meaningful way Noisette's complaint.  To allow Noisette to abandon course after he affirmatively chose an appeal at the administrative level could frustrate Title VII's goal of encouraging discrimination complaints to be resolved at the administrative level.  See id.  Courts have recognized the importance of the exhaustion requirement in similar, though not identical, circumstances, such as where plaintiffs had withdrawn or failed to pursue their complaints at the initial administrative step.  "Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints.  All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings."  <u>Gagnon v. Potter</u>, No. 3:05-CV-324RM, 2006 WL 2051730, at *3 (N.D. Ind. July 19, 2006) (holding that plaintiff was not allowed to voluntarily withdraw her complaint after electing to have her complaint heard before an

administrative law judge); <u>see also</u> <u>Mackay v. USPS</u>, 607 F. Supp. 271, 276 (E.D. Pa. 1985) ("The exhaustion requirement is not met by plaintiff's taking the initial administrative steps and then abandoning the process.")

The time limits are not a jurisdictional bar to a civil suit, though, because they can be rendered inapplicable by waiver, estoppel and equitable tolling. <u>See</u> <u>Bowden</u>, 106 F.3d at 437; <u>see also</u> <u>Ikossi v. Dep't of Navy</u>, 516 F.3d 1037, 1044 (D.C. Cir. 2008); <u>Brown</u>, 777 F.2d at 16. "In the D.C. Circuit, it is clear that '[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense.'" <u>Jones</u>, 321 F. Supp. 2d at 12 (alteration in original) (quoting <u>Bowden</u>, 106 F.3d at 437).

Noisette argues that this case should go forward based on equitable considerations. Specifically, he argues that because "the OFO had taken no substantive action on [his appeal]" and briefing had not begun prior to his withdrawal, "[t]he agency was not prejudiced in any way[.]" (Pl.'s Opp'n at 12.) While a "plaintiff who fails to comply, to the letter, with administrative deadlines 'ordinarily will be denied a judicial audience[,]'" <u>Brown</u>, 777 F.2d at 13 (quoting <u>Shehadeh v.</u>

Chesapeake and Potomac Tel. Co. of Md., 595 F.2d 711, 717-18
(D.C. Cir. 1978) (footnote omitted)), equitable doctrines may be
applied, though sparingly.  See Nat'l R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 113 (2002); Silver v. Leavitt, Civil Action
No. 05-0968 (JDB), 2006 WL 626928, at *10 (D.D.C. Mar. 13, 2006).
Equitable doctrines have been applied where a party has made a
technically defective effort to act within a limitations period,
see Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)
(surveying cases), been misled or lulled into inaction by a
federal agency, see Gray v. Phillips Petroleum Co., 858 F.2d 610,
615-16 (10th Cir. 1988), or been given erroneous advice about a
limitations period.  See Jarrell v. USPS, 753 F.2d 1088, 1091-92
(D.C. Cir. 1985).

It is certainly the case that a mere 23 days before Noisette
asked to withdraw his appeal, he had the right to file this
action without involving the EEOC at all.  However, even if, as
the plaintiff argues, lack of prejudice to the EEOC is an
equitable justification for avoiding the 180-day waiting period,
alleging and showing lack of prejudice to the EEOC are two
different things.  Plaintiff carries the burden of pleading and
proving facts supporting equitable avoidance of the waiting
period.  He has not carried that burden.  While the parties had
not filed briefs, there is no factual evidence in the record
regarding what efforts and resources the EEOC had expended and

whether plaintiff's withdrawal did prejudice the EEOC.  Nor has
the plaintiff cited any authority for the proposition that
withdrawing an appeal 23 days after filing it is presumptively
not prejudicial to the EEOC, or even that lack of prejudice to
the EEOC has been recognized as a basis for equitable avoidance
of the 180-day waiting period.  He certainly has not shown that
any of the narrow set of recognized bases for equitable avoidance
apply here.  Noisette had the benefit of counsel and was advised
of his rights to appeal and of the appropriate timing
requirements.  (Def.'s Mem. at 11.)  There is no evidence that
Noisette was misled by any federal agency.  And Congress's
preference for federal agencies to examine and either correct or
resolve through informal mediation or formal complaint procedures
allegations of discrimination in the federal workplace before
there is resort to private lawsuits in court counsels against
permitting equitable avoidance here.  Noisette, with the benefit
of counsel, made an informed choice among options of which he was
fully notified in the FAD.  The statute and the regulation
dictate that his choice -- the appeal process before the EEOC --
must be allowed to run its course before he can maintain an
action here.  Noisette's complaint, therefore, will be dismissed
without prejudice and Noisette will be allowed to file a new

complaint after the OFO has attempted to resolve his charge for the full 180 days.[2]

## CONCLUSION

The defendant's motion to dismiss Counts III and IV will be denied as pendent venue applies to those counts.  The defendant's motion to dismiss Counts I and II, treated as a motion for summary judgment, will be denied because Noisette has raised a genuine issue of material fact as to when he had a reasonable suspicion that he was subject to the alleged discrimination.  However, because Noisette initiated this action before exhausting his administrative remedies, the defendant's motion to dismiss will be granted in part.  The complaint will be dismissed without prejudice, and Noisette may file a new complaint after the Commission has attempted to resolve his appeal for the full 180-day period.  A separate order accompanies this Memorandum Opinion.

---

[2] Noisette must wait 180 days from the filing of his appeal or file his complaint anew within 90 days from when the OFO issues a final decision.  Since the EEOC granted Noisette's withdrawal request, the agency never made a final decision on his appeal, as defined by the regulation governing FAD appeals.  "The [OFO], on behalf of the Commission, shall issue a written decision setting forth its reasons for the decision. . . .  The decision on an appeal from an agency's final action shall be based on a de novo review" of the complaint.  29 C.F.R. § 1614.405(a).  There is no evidence that the OFO conducted a de novo review of Noisette's complaint when it granted his withdrawal request.  Also, while the OFO is empowered to dismiss an appeal under certain circumstances, none of the statutorily prescribed justifications for dismissal includes a voluntary withdrawal.  See 29 C.F.R. §§ 1614.107, 1614.403(c).

SIGNED this 12th day of March, 2010.

                                         /s/
                                       RICHARD W. ROBERTS
                                       United States District Judge